Eric Slocum Sparks
Arizona State Bar No. 11726
LAW OFFICES OF ERIC SLOCUM SPARKS, P.C.
110 South Church Avenue, #2270
Tucson, Arizona 85701
Telephone (520) 623-8330
Facsimile (520) 623-9157
eric@ericslocumsparkspc.com

Attorney for Debtors

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| In re: | ) |
| | ) |
| JEFFREY MARC ROCKLAND and | ) No. 4:09-bk-11901-JMM |
| SUWATANA APAIRATANA | ) |
| ROCKLAND, | ) |
| | ) Chapter 11 |
| | ) |
| Debtors. | ) |
| | ) DISCLOSURE STATEMENT |
| | ) |
| _____ | ) |

**TABLE OF CONTENTS**

| I. | INTRODUCTION | 4 |
|---|---|---|
| II. | DEFINITIONS | 4 |
| III. | DISCLAIMER | 5 |
| IV. | DEBTOR'S BACKGROUND, EVENTS LEADING TO CHAPTER 11 FILING AND OPERATIONS UNDER CHAPTER 11 | 6 |
| V. | VOTING | 7 |
| VI. | GENERAL INFORMATION AND DISCLOSURE | 9 |
| VII. | FINANCIAL INFORMATION | 12 |
| VIII. | SUMMARY OF THE PLAN | 12 |
| 1. | Class 1 - Administrative Claims | 12 |
| 2. | Class 2 - Priority Claims of Governmental Units | 12 |
| 3. | Class 3 - Secured Claim of Toyota Motor Credit | 13 |
| 4. | Class 4 - Secured Claim of Wells Fargo Bank, N.A. | 13 |

| 5. | Class 5 - Secured Claim of America's Servicing Company | 14 |
|---|---|---|
| 6. | Class 6 - Second Lien Claim of CLC Consumer Services | 14 |
| 7. | Class 7 - Secured Claim of America's Servicing Company | 15 |
| 8. | Class 8 - Second Lien Claim of CLC Consumer Services | 15 |
| 9. | Class 9 - Secured Claim of CitiMortgage, Inc. | 16 |
| 10. | Class 10 - Secured Claim of Suntrust Mortgage, Inc. s/b/m to Crestar Mortgage | 16 |
| 11. | Class 11 - Secured Claim of Title Security | 17 |
| 12. | Class 12 - Second Lien Claim of Wells Fargo Bank, N.A. | 18 |
| 13. | Class 13 - Secured Claim of CitiMortgage, Inc. | 18 |
| 14. | Class 14 - Deficiency Claim of CitiMortgage, Inc. | 20 |
| 15. | Class 15 - Secured Claim of Countrywide Home Loans | 20 |
| 16. | Class 16 - Deficiency Claim of Countrywide Home Loans | 22 |
| 17. | Class 17 - Secured Claim of The Bank of New York | 22 |
| 18. | Class 18 - Deficiency Claim of The Bank of New York | 24 |
| 19. | Class 19 - Secured Claim of Wells Fargo Bank, N.A. c/o GMAC Mortgage, LLC | 24 |
| 20. | Class 20 - Deficiency Claim of Wells Fargo Bank, N.A. c/o GMAC Mortgage, LLC | 26 |
| 21. | Class 21- Second Lien Claim of U.S. Bank, National Association, as Indenture Trust | 26 |
| 22. | Class 22 - Secured Claim of INDYMAC Federal Bank, FSB | 26 |
| 23. | Class 23 - Deficiency Claim of INDYMAC Federal Bank, FSB | 28 |
| 24. | Class 24 - Secured Claim of INDYMAC Bank | 28 |
| 25. | Class 25 - Deficiency Claim of INDYMAC Bank | 30 |
| 26. | Class 26 - Secured Claim of Suntrust Mortgage, Inc. | 30 |
| 27. | Class 27 - Deficiency Claim of Suntrust Mortgage, Inc. | 32 |
| 28. | Class 28 - Secured Claim of Suntrust Mortgage, Inc. | 32 |
| 29. | Class 29 - Deficiency Claim of Suntrust Mortgage, Inc. | 34 |
| 30. | Class 30 - Deficiency Claim of CitiMortgage, Inc. | 34 |
| 31. | Class 31 - Deficiency Claim of The Bank of New York | 35 |

2

| 32. | Class 32- Deficiency Claim of Bank of America, National Association as successor | 35 |
|---|---|---|
| 33. | Class 33 - Deficiency Claim of INDYMAC Federal Bank, FSB | 35 |
| 34. | Class 34 - Deficiency Claim of Green Tree Servicing, LLC | 36 |
| 35. | Class 35 - Deficiency Claim of Kenneth Padilla | 36 |
| 36. | Class 36 - Unsecured Deficiency and General Unsecured Claims | 36 |
| 37. | Class 37 - Contingent, Unliquidated and Disputed Claims | 37 |
| 38. | Class 38 - Debtor's Interest | 37 |
| IX. | DISPUTED CLAIMS | 37 |
| X. | EXECUTORY CONTRACTS | 37 |
| XI. | DOMESTIC SUPPORT OBLIGATIONS | 37 |
| XII. | CHAPTER 7 LIQUIDATION ANALYSIS | 38 |
| XIII. | CRAM-DOWN | 38 |
| XIV. | TAX CONSEQUENCES | 38 |
| XV. | IMPLEMENTATION AND CONSUMMATION OF THE PLAN | 38 |
| XVI. | QUARTERLY FEES AND REPORTS | 39 |
| XVII. | RETENTION OF JURISDICTION | 39 |
| XVIII. | REPRESENTATION | 40 |
| XIX. | CONCLUSION | 40 |

**EXHIBITS**

| A. | Plan of Reorganization Filed as a Separate Document |
|---|---|
| B. | Ballot |
| C. | Liquidation Analysis |
| D. | Available Asset Listing |
| E. | Anticipated Revenue and Expense |
| F. | Operation Reports |

# I. INTRODUCTION

On May 29, 2009, Debtors, Jeffrey Marc Rockland and Suwatana Apairatana Rockland, husband and wife, (hereinafter referred to as "Debtor"), filed a voluntary petition for Chapter 11 relief in the United States Bankruptcy Court for the District of Arizona.

This Disclosure Statement is filed pursuant to 11 U.S.C. §1125 and is intended to provide the holders of claims and interest with adequate information about the Debtor and Plan so as to enable the creditors to make an informed judgment as to their acceptance or rejection of the Plan.

# II. DEFINITIONS

As utilized in this Disclosure Statement and in the Plan of Reorganization which accompanies this Disclosure Statement, the following definitions apply to the following terms:

1. "Adequate information" means information that would enable a hypothetical reasonable investor typical of holders of claims or interest of the Debtor's estate, to make an informed judgment about the Debtor's Plan of Reorganization.

2. "Allowed and Approved Claim" shall mean a timely filed Proof of Claim pursuant to an Order of the Court setting a bar date to which that claim should be filed and no objection to the claims having been filed. If an objection to a claim is filed, said claim will be allowed to the extent ordered by the Court.

3. "Bankruptcy Code" shall mean the Bankruptcy Code as set forth in Tile 11 of the United States Code.

4. "Bankruptcy Court" shall mean in the United States Bankruptcy Court for the District of Arizona.

5. "Confirmation of the Plan" shall mean the entry of an order by the Bankruptcy Court confirming the Plan of Reorganization in accordance with §1129 of the Bankruptcy Court Code.

6. "Consummation of the Plan" means the accomplishment of all things required or provided for under the terms of the Plan.

7. "Court" shall mean the United States Bankruptcy Court for the District of Arizona.

4

8. "Creditors" shall mean all persons holding claims for secured and unsecured obligations, liabilities, demands or claims of any nature whatsoever against the Debtor arising at any time prior to confirmation of the Plan and administrative creditors.

9. "Debtor" shall mean the petitioners in the above-captioned Bankruptcy case.

10. "Disclosure Statement" shall mean this Disclosure Statement (hereinafter "Disclosure Statement") filed in this case approved, after notice and a hearing by the Court as being in conformity with §1129 of the Code.

11. "Effective date" shall be the date that an Order is entered by the U.S. Bankruptcy Court confirming the Debtor's Plan of Reorganization in accordance with §1129 of the Code.

12. "Petition" means the original Chapter 11 Petition filed by the Debtor.

13. "Plan" shall mean the Plan of Reorganization accompanying this Disclosure Statement as it may be amended, modified and/or supplemented pursuant to which the Debtor proposes payment in whole or in part of creditors' claims.

14. "Plan distribution date" shall be a date that ends with the first full calendar quarter after the date that the Chapter 11 Plan is confirmed by the Court, which the Debtor projects to be March, 2010.

15. All other terms not specifically defined by this Disclosure Statement shall have the meaning as designated in §101 of the Bankruptcy Code or, if not contained therein, their ordinary meaning.

### III. DISCLAIMER

Any representations concerning the Debtor's Plan other than as set forth herein are unauthorized. This Disclosure Statement is designed to provide information the Debtor deems material, important and necessary for its creditors to arrive at an informed decision in exercising their right to accept or reject the Plan. **YOU SHOULD THEREFORE NOT RELY ON ANY OTHER INFORMATION, REPRESENTATIONS OR INDUCEMENTS IN ASSESSING THE MERITS OF THE DEBTOR'S PLAN OTHER THAN THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT.**

The Debtor expressly does not warrant nor represent that there are no inaccuracies in the

5

following Disclosure Statement although the information provided is accurate to the best of Debtor's knowledge, information and belief. Creditors should also be aware that the Court has not undertaken any individual determination to verify the accuracy of the information contained in this Disclosure Statement. Finally, the attorney for the Debtor has not made any independent evaluation as to the accuracy of the information contained herein other than to ascertain that the information contained herein is generally consistent with information provided by the Debtor. Notwithstanding the foregoing, the Debtor believes that the information contained herein is correct and accurate and complies with the requirements of the Bankruptcy Code.

## IV. DEBTOR'S BACKGROUND, EVENTS LEADING TO CHAPTER 11 BANKRUPTCY FILING AND OPERATIONS UNDER CHAPTER 11

Background and History of Debtor

Debtor earned most of its income for the period 2000 - 2007 from Jeffrey Rockland's business as a mortgage broker and additional income from rental real estate properties. Jeffrey had invested in real estate since 1984 and had enjoyed success in this area. Debtor owns multiple parcels of improved real property which he has historically leased. Debtor's mortgage business was focused on deals with other real estate investors. Additionally, Debtor earned supplemental income during 2004 - 2006 through an import business operated primarily by Suwatana Rockland.

Events leading up to the Chapter 11 filing

**Change in Business Conditions**

During the past few years Debtor's rental properties experienced vacancies and declining rents. Additionally, the import business experienced a sharp drop in net income due to a loss of value in the US dollar, raising costs of import products by 25%. This cost change led to a radical decline in retail sales. Furthermore, by the end of 2007, Debtor experienced almost a complete loss of the mortgage broker business due to the changes in products and the economic climate.

**Inability to meet obligations and efforts to earn income**

6

By the end of 2007 and in 2008, Debtor could not fund losses on rental properties or debt on the import store because there were not profits from the almost completely dead mortgage business. Early in 2008 Debtor closed the mortgage business to join a bank/broker company offering FHA loans. This was a commission only job. Shortly afterwards, Jeffrey was offered and accepted a fill-time position teaching dance at a private high school. This allowed Debtor to earn a consistent paycheck while attempting to pursue and close loans through the bank/broker company.

**Vacancy and other problems with rental properties**

During 2008 one of Debtor's rental properties became vacant. This property cost Debtors in excess of $2,000.00 per month. Additionally, several other of Debtor's rental properties needed repairs. Creditors cut off Debtor's credit and the property values dropped, thus floating properties and keeping them rented while waiting for better times was not an option. Debtor tried all possible avenues before realizing deciding the only course of action was to file for Chapter 11 Reorganization.

# V. VOTING

A. Ballots and Voting Deadline.

A ballot to be used for voting to accept or reject the Plan is enclosed with this Disclosure Statement and mailed to creditors entitled to vote. A creditor must (1) carefully review the ballot and instructions thereon; (2) execute the ballot; and, return it to the address indicated thereon by the deadline in order to be considered for voting purposes. The Bankruptcy Court has directed that, in order to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be received no later than the date established by the Bankruptcy Court, with a copy being provided to the following address: LAW OFFICES OF ERIC SLOCUM SPARKS, P.C., 110 South Church Avenue, #2270, Tucson, Arizona 85701. ***The enclosed Ballot states the Court established deadline in which all ballots must be filed with the Court and copies provided to Debtor's counsel.***

B. Creditors Entitled to Vote.

Any creditor of the Debtor, whose claim is impaired under the Plan is entitled to vote if it has filed a Proof of Claim on or before the last date set by the Bankruptcy Court for such filings. Any claim to

which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the claim in an amount which it deems proper for the purpose of accepting or rejecting the Plan upon Motion by the creditor whose claim is subject to any objection. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Court to confirm the Plan. In addition, a creditor's vote may be disregarded if the Bankruptcy Court determines that the creditor's acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

C. Definition of Impairment.

Under § 1124 of the Bankruptcy Code, a class of claims or equity interests is impaired under a Plan of Reorganization unless, with respect to each claim or equity interest of such class, the Plan:

Except as provided in Section 1123(a)(4) of this title, a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan -

(1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest;

(2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default –

(A) cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in Section 365(b)(2) of this title;

(B) reinstates the maturity of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision of such applicable law; and

(C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder or such contractual provision or such applicable law; and

(D) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

11 U.S.C. § 1124.

D. Classes Impaired Under the Plan.

Creditors holding claims or interests in Classes 2 through 37 are impaired under the Plan and are eligible, subject to the limitations set forth above, to vote to accept or reject the Plan. Creditors holding

claims in Class 1 are not impaired under the Plan and are not entitled to vote with respect to acceptance or rejection of the Plan.  Such creditors will be paid in accordance with the provisions of the Plan. ***See 11 U.S.C. §1126(f)***.

E. Votes Required for Class Acceptance.

The Bankruptcy Code defines acceptance of a Plan by a class of creditors as acceptance by holders of two-thirds in dollar amount and by a majority in number of the claims of that class which actually cast ballots for acceptance or rejection of the Plan, i.e., acceptance takes place only if two-thirds in amount and majority in numbers of the creditors actually voting cast their ballots in favor of acceptance.

SINCE MAIL DELAYS MAY OCCUR, IT IS IMPORTANT THAT THE BALLOT OR BALLOTS BE MAILED OR DELIVERED WELL IN ADVANCE OF THE DATE SPECIFIED.  ANY BALLOTS RECEIVED AFTER THIS DATE MAY NOT BE INCLUDED IN ANY CALCULATION TO DETERMINE WHETHER THE DEBTOR'S CREDITORS HAVE VOTED TO ACCEPT OR REJECT THE PLAN.

THIS IS A SOLICITATION BY THE PROPONENT ONLY AND IS <u>NOT</u> A SOLICITATION BY THE PROPONENT'S ATTORNEY OR ACCOUNTANT, AND THE PRESENTATIONS MADE HEREIN ARE THOSE OF THE PROPONENT AND NOT OF THE PROPONENT'S ATTORNEY OR ACCOUNTANT, EXCEPT AS OTHERWISE INDICATED.  THE RECORDS SUBSEQUENT TO THE FILING OF THE PETITION FOR REORGANIZATION HAVE BEEN KEPT BY THE DEBTOR-IN-POSSESSION AND MONTHLY FINANCIAL REPORTS HAVE BEEN SUBMITTED BY THE DEBTOR-IN-POSSESSION FROM TIME TO TIME SINCE THE FILING OF THE PETITION. WHILE EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THE ACCURACY OF THE MONTHLY REPORTS, THEIR ACCURACY CANNOT BE GUARANTEED.

## VI. GENERAL INFORMATION AND DISCLOSURE

### Utilizing the Standards of A.C. Williams

*In re A.C. Williams Co.*, 25 B.R. 173 (Bankr. N.D. Ohio, 1982); *In re Cardinal Congregate I*, 121 B.R. 760 (Bankr. S.D. Ohio, 1982).

9

Sources of Information.

Information relating to financial matters has been taken from the records of Debtor and interviews with the Debtor. Information of a legal nature has been provided by the counsel of record. Debtor has maintained and provided accounting and financial information.

Current Condition of Debtor.

Debtor is currently earning income, from various sources, including teaching dance, mortgage broker activities, net rental income from of real property, and net retail and wholesale income from the import business. Debtor has been making payments to its secured creditors since the filing of Chapter 11. See three months of monthly operating reports attached as Exhibit F.

The Accounting Process.

The accounting process is conducted using generally accepted accounting principles. Accounting information is furnished by the Debtor and is presented on a cash basis.

Inventory and Asset Description.

*See* Article XII.

Future Management.

Management of Debtor's affairs will remain with Debtor.

The Anticipated Future of Debtor's Affairs.

The funds needed to comply with Debtor's Chapter 11 Plan shall come from Debtor's business (earned income). Debtor anticipates earnings from various sources of income, including teaching dance, mortgage broker activities, net rental income from of real property, and net retail and wholesale income from the import business. Debtor plans to give up its retail space after the holiday season and focus the import business on various wholesale opportunities including possible marketing on the internet. Debtor plans to continue in education programs over the next few years to go into fields which will provide long term income stability. Please refer to Exhibit E, anticipated income and expenses.

Incidents which led to the filing of the Chapter 11.

*See* ARTICLE IV of this Disclosure Statement.

Disclaimer regarding the information given.

*See* ARTICLE III of this Disclosure Statement.

Amount of claims scheduled.

*See* ARTICLES VII AND VIII.

The estimated return to the creditors if liquidated.

*See* ARTICLE XII.

A copy of the proposed plan.

*See* **Exhibit "A"** included herewith and filed as a separate document.

Administrative Claims.

These claims consist of the expenses of administration of the estate including attorney fees for Debtor's counsel and any unpaid fees to the U.S. Trustee. The debtor estimates these costs and expenses in excess of $20,000.00.

Tax Claims.

As reflected in the original schedules filed by the Debtor, Debtor estimated tax claims in the amount of $1,333.32. This does not include any amounts that may be due for ad valorem claims which are secured against real property, if any.

Secured Claims.

As reflected in the original schedules filed by the Debtor, Debtor estimated secured claims in the amount of $3,593,604.00.

Unsecured Claims.

As reflected in the original schedules filed by the Debtor, Debtor estimated unsecured claims in the amount of $428,819.90.

Child Support Claims.

As reflected in the schedules filed by the Debtor, there are no domestic support orders against the Debtor.

# VII. FINANCIAL INFORMATION

See Liquidation Analysis attached as Exhibit C. See Listing of Assets as Exhibit D. See Anticipated Revenue and Expense as Exhibit E. See recent 3 months of monthly operating reports attached as Exhibit F.

# VIII. SUMMARY OF THE PLAN OF REORGANIZATION

The Plan provides for 38 classes of claims to be paid or administered in the following manner:

Class 1 - Administrative Claims.

These claims are for the expenses of administration of the estate, including attorney fees for Debtor's counsel through September, 2009, in the approximate sum of $20,000.00 and unpaid fees to the U.S. Trustee, if any. Debtor believes, at the time that the Debtor's Chapter 11 Plan is confirmed, that there will be an administrative expense claim in the approximate amount of $20,000.00. This claim shall be paid in cash, or in the amounts allowed by the Court upon the Plan distribution date unless otherwise agreed to between the Debtor and the administrative creditor. **(This class is not impaired.)**

Class 2 - Priority Claims of Governmental Units.

A.    Classification: Class 2 claims consists of all allowed claims of the United States Internal Revenue Service("IRS") and/or State of Arizona, Department of Revenue("AZDOR") and/or the Department of Economic Security("ADES), City of Tucson or other government agency which are entitled to priority pursuant to Section 507(a)(7) of the Bankruptcy Code except ad valorem taxes. Proof of claims for this class have been filed and withdrawn. The Debtor believes there may be claims totaling $1,333.32 in this Class.

B.    Impairment: Class 2 is impaired.

C.    Treatment: Each holder of a Class 2 allowed claim shall retain its claim, in accordance with Section 1129 of the Bankruptcy Code. The claim shall bear simple interest at a fixed rate equal to that rate which would be required to be paid as of the Effective Date under Section 6621 and/or 6622 of the Internal Revenue Code, or such other interest rate as the Bankruptcy Court determines is sufficient to confer upon the tax note a value as of the Effective Date equal to the principal amount of

12

such claim. The allowed claim shall be payable in 60 equal monthly installments of principal, along with accrued interest, in deferred cash payments over a period not to exceed six years from date of the Effective date of the plan. The first payment shall commence on the first day of the month immediately following the month of the Effective Date. The claim is subject to prepayment at any time without penalty or premium and shall have such other terms as are usual and customary.

Class 3 - Secured Claim of Toyota Motor Credit ("Toyota").

A.    Classification: This claim consists of the allowed secured claim of Toyota to the extent of the value of the secured creditor's interest in the Debtor's interest in the personal property identified as a 2009 Toyota Sienna.  This claim is evidenced by a title lien on the personal property. Debtor estimates this claim to be $15,000.00. Debtor believes this claim is fully secured.

B.    Impairment: Class 3 is impaired.

C.    Treatment: The Class 3 creditor will be paid the amount of its allowed secured claim in 72 equal monthly installments at 6% interest beginning 60 days after the Effective Date.  Debtor has been making payments to the Class 35 creditor.

Class 4 - Secured Claim of Wells Fargo Bank, N.A. ("Wells").

A.    Classification:  Class 4 consists of the allowed secured claim of Wells secured by the real property located at 7301 Westward Look Dr., Tucson, AZ, Debtor's Principle Residence,  which is valued at approximately $386,000.00. This claim is evidenced by a Deed of Trust. Creditor has filed a proof of claim totaling $374,337.76. Debtor believes this entire claim is secured.

B.    Impairment: Class 4 is impaired.

C.    Treatment: The Class 4 claimant which holds a first mortgage on the real property will have an allowed claim in the amount of approximately $374,337.76. The Class 4 claim shall be paid per the Loan Modification Agreement, with a post-modification due date of November 1, 2009, and monthly payments in the amount of $2,233.35. The terms of the Loan Modification Agreement shall supersede any prior agreements between Debtor and the Class 4 creditor. This obligation will be re-amortized beginning on November 1, 2009 at the allowed amount and paid in equal monthly installments of principal and interest with interest calculated at 4.875% per annum. The allowed Class 4 secured claim

will be re-amortized over 40 years, plus the funds necessary for the escrow account for real property taxes and insurance, payable in equal monthly installments. The funds in the escrow account will remain in place for the payment of real property taxes and insurance and any funds in the account on the Petition Date will be used for that purpose. Debtor may prepay this obligation without penalty at any time. Prior to confirmation, any payments the debtor has been making shall be applied against the principal to reduce the principal balance. Claimant shall release its lien once its Allowed Secured Claim has been paid. Debtor may sell the real property at any time without penalty so long as the balance owing on Claimant's allowed secured claim is satisfied out the sale proceeds.

Class 5 - Secured Claim of America's Servicing Co. ("ASC").

      A.    Classification: Class 5 consists of the allowed secured claim of ASC secured by the real property located at 3310-12 E. Presidio Rd., Tucson, AZ which is valued at approximately $131,000.00. This claim is evidenced by a Deed of Trust. Creditor has filed a proof of claim totaling $131,104.05. Debtor believes this entire claim is secured.

      B.    Impairment: Class 5 is impaired.

      C.    Treatment: The Class 5 claimant which holds a first mortgage on the real property will have an allowed claim in the amount of $131,104.05. This obligation will be re-amortized beginning on the Confirmation Date at the allowed amount and paid in equal monthly installments of principal and interest with interest calculated at five percent (5.0%) per annum. The allowed Class 5 secured claim will be re-amortized over 40 years, plus the funds necessary for the escrow account for real property taxes and insurance, payable in equal monthly installments. The funds in the escrow account will remain in place for the payment of real property taxes and insurance and any funds in the account on the Petition Date will be used for that purpose. Debtor may prepay this obligation without penalty at any time. Prior to confirmation, any payments the debtor has been making shall be applied against the principal to reduce the principal balance. Claimant shall release its lien once its Allowed Secured Claim has been paid. Debtor may sell the real property at any time without penalty so long as the balance owing on Claimant's allowed secured claim is satisfied out the sale proceeds.

Class 6 - Second Lien Claim of CLC Consumer Services ("CLC").

14

A.     Classification: Class 6 consists of the second lien claim of CLC in the approximate amount of $26,906.00 on the real property located at 3310-12 E. Presidio Rd., Tucson, AZ, which is valued at approximately $131,000.00.

B.     Impairment: Class 6 is impaired.

C.     Treatment: The Class 6 claimant, which holds a second mortgage on the real property, is believed to be wholly unsecured. The Class 6 creditor shall have its lien released upon confirmation of the Plan of Reorganization. Any deficiency amount shall be treated as a Class 36 unsecured claim and paid on a pro-rata basis.

Class 7 - Secured Claim of America's Servicing Co. ("ASC").

A.     Classification: Class 7 consists of the allowed secured claim of ASC secured by the real property located at 3314-16 E. Presidio Rd., Tucson, AZ which is valued at approximately $131,000. This claim is evidenced by a Deed of Trust. Creditor has filed a proof of claim totaling $130,844.15. Debtor believes this entire claim is secured.

B.     Impairment: Class 7 is impaired.

C.     Treatment: The Class 7 claimant which holds a first mortgage on the real property will have an allowed claim in the amount of $130,844.15. This obligation will be re-amortized beginning on the Confirmation Date at the allowed amount and paid in equal monthly installments of principal and interest with interest calculated at five percent (5.0%) per annum. The allowed Class 7 secured claim will be re-amortized over 40 years, plus the funds necessary for the escrow account for real property taxes and insurance payable in equal monthly installments. The funds in the escrow account will remain in place for the payment of real property taxes and insurance and any funds in the account on the Petition Date will be used for that purpose. Debtor may prepay this obligation without penalty at any time. Prior to confirmation, any payments the debtor has been making shall be applied against the principal to reduce the principal balance. Claimant shall release its lien once its Allowed Secured Claim has been paid. Debtor may sell the real property at any time without penalty so long as the balance owing on Claimant's allowed secured claim is satisfied out the sale proceeds.

5.8     Class 8 - Second Lien Claim of CLC Consumer Services ("CLC").

15

A.    <u>Classification</u>: Class 8 consists of the second lien claim of CLC in the approximate amount of $27,867.00 on the real property located at 3314-16 E. Presidio Rd., Tucson, AZ, which is valued at approximately $131,000.00.

B.    <u>Impairment</u>: Class 8 is impaired.

C.    <u>Treatment</u>: The Class 8 claimant, which holds a second mortgage on the real property, is believed to be wholly unsecured. The Class 8 creditor shall have its lien released upon confirmation of the Plan of Reorganization. Any deficiency amount shall be treated as a Class 36 unsecured claim and paid on a pro-rata basis.

Class 9 - Secured Claim of CitiMortgage, Inc. ("Citi").

A.    <u>Classification</u>: Class 9 consists of the allowed secured claim of Citi secured by the real property located at 1320 52nd Ave. Ct., Greeley, CO, which is valued at approximately $180,000.00. This claim is evidenced by a Deed of Trust. Creditor has filed a proof of claim totaling $168,303.41. Debtor believes this entire claim is secured.

B.    <u>Impairment</u>: Class 9 is impaired.

C.    <u>Treatment</u>: The Class 9 claimant which holds a first mortgage on the real property will have an allowed claim in the amount of $168,303.41. This obligation will be re-amortized beginning on the Confirmation Date at the allowed amount and paid in equal monthly installments of principal and interest with interest calculated at five percent (5.0%) per annum. The allowed Class 9 secured claim will be re-amortized over 40 years, plus the funds necessary for the escrow account for real property taxes and insurance payable in equal monthly installments. The funds in the escrow account will remain in place for the payment of real property taxes and insurance and any funds in the account on the Petition Date will be used for that purpose. Debtor may prepay this obligation without penalty at any time. Prior to confirmation, any payments the debtor has been making shall be applied against the principal to reduce the principal balance. Claimant shall release its lien once its Allowed Secured Claim has been paid. Debtor may sell the real property at any time without penalty so long as the balance owing on Claimant's allowed secured claim is satisfied out the sale proceeds.

Class 10 - Secured Claim of Suntrust Mortgage, Inc. s/b/m to Crestar Mortgage. ("Crestar").

A. <u>Classification</u>: Class 10 consists of the allowed secured claim of Crestar secured by the real property located at 7932 E. Malvern Pl., Tucson, AZ, which is valued at approximately $120,120.00. This claim is evidenced by a Deed of Trust. Debtor believes creditor has a claim totaling approximately $119,762.00. Debtor believes this entire claim is secured.

B. <u>Impairment</u>: Class 10 is impaired.

C. <u>Treatment</u>: The Class 10 claimant which holds a first mortgage on the real property will have an allowed claim in the amount of $119,762.00. This obligation will be re-amortized beginning on the Confirmation Date at the allowed amount and paid in equal monthly installments of principal and interest with interest calculated at five percent (5.0%) per annum. The allowed Class 10 secured claim will be re-amortized over 40 years, plus the funds necessary for the escrow account for real property taxes and insurance payable in equal monthly installments. The funds in the escrow account will remain in place for the payment of real property taxes and insurance and any funds in the account on the Petition Date will be used for that purpose. Debtor may prepay this obligation without penalty at any time. Prior to confirmation, any payments the debtor has been making shall be applied against the principal to reduce the principal balance. Claimant shall release its lien once its Allowed Secured Claim has been paid. Debtor may sell the real property at any time without penalty so long as the balance owing on Claimant's allowed secured claim is satisfied out the sale proceeds.

Class 11 - Secured Claim of Title Security ("Title").

A. <u>Classification</u>: Class 11 consists of the allowed secured claim of Title secured by the real property located at 3215-21 E. Patricia St., Tucson, AZ, which is valued at approximately $204,000.00. This claim is evidenced by a Deed of Trust. Debtor believes creditor has a claim totaling approximately $204,000.00. Debtor believes this entire claim is secured.

B. <u>Impairment</u>: Class 11 is impaired.

C. <u>Treatment</u>: The Class 11 claimant which holds a first mortgage on the real property will have an allowed claim in the amount of $204,000.00. This obligation will be re-amortized beginning on the Confirmation Date at the allowed amount and paid in equal monthly installments of principal and interest with interest calculated at five percent (5.0%) per annum. The allowed Class 11 secured claim

17

will be re-amortized over 40 years, plus the funds necessary for the escrow account for real property taxes and insurance payable in equal monthly installments. The funds in the escrow account will remain in place for the payment of real property taxes and insurance and any funds in the account on the Petition Date will be used for that purpose. Debtor may prepay this obligation without penalty at any time. Prior to confirmation, any payments the debtor has been making shall be applied against the principal to reduce the principal balance. Claimant shall release its lien once its Allowed Secured Claim has been paid. Debtor may sell the real property at any time without penalty so long as the balance owing on Claimant's allowed secured claim is satisfied out the sale proceeds.

      5.12   <u>Class 12 - Second Lien Claim of Wells Fargo Bank, N.A ("Wells").</u>

      A.   <u>Classification</u>: Class 12 consists of the second lien claim of Wells in the approximate amount of $87,775.26 on the real property located at 3215-21 E. Patricia St., Tucson, AZ, which is valued at approximately $204,000.00.

      B.   <u>Impairment</u>: Class 12 is impaired.

      C.   <u>Treatment</u>: The Class 12 claimant, which holds a second mortgage on the real property, is believed to be wholly unsecured. The Class 12 creditor shall have its lien released upon confirmation of the Plan of Reorganization. Any deficiency amount shall be treated as a Class 36 unsecured claim and paid on a pro-rata basis.

      <u>Class 13 - Secured Claim of CitiMortgage, Inc. ("Citi").</u>

      A.   <u>Classification</u>: This claim consists of the allowed secured claim of CitiMortgage, Inc. ("Citi") to the extent of the value of the secured creditor's interest in the Debtor's interest in the real property located at 1613 57th Ave., Greeley, CO. This claim is evidenced by a first lien mortgage evidenced by a promissory note and deed of trust. Debtor believes a portion of the Class 13 creditor's claim is unsecured.

      B.   <u>Impairment</u>: Class 13 is impaired.

      C.   <u>Treatment</u>: IN THE EVENT THE DEBTOR IS ABLE TO REACH A STIPULATION WITH CITI AS TO ITS TREATMENT, THE TERMS AND CONDITIONS THEREIN WILL SUPERSEDE THE TREATMENT SET FORTH HEREIN. Under § 506 of the Bankruptcy Code,

a secured creditor has a secured claim to the extent of the creditor's interest in the Debtor's interest in the collateral and an unsecured claim for the balance, if any, unless the creditor makes a 1111(b) election, and, if eligible, elects to have its claim treated as fully secured. The allowed amount of the creditor's secured claim will be the lesser of the value of the creditor's interest in the Debtor's interest in the property as determined under § 506, or the allowed amount of the creditor's claim. The Debtor has not obtained a current appraisal, but believes the current market value of the real property at 1613 57th Ave. to be $154,000.00. The Debtor proposes to limit the Class 13 creditor's secured claim to $154,000.00 and to treat the balance of its claim as an unsecured deficiency claim and treat and pay it as a Class 36 unsecured creditor. If the Debtor and the Class 13 creditor cannot agree as to the amount of the Class 13 creditor's allowed secured claim, the Court will be called upon to make that determination.

The allowed claim of the Class 13 creditor shall be paid, assuming no 1111(b) election is made by creditor, and secured by the first lien mortgage evidenced by a promissory note and deed of trust, modified as follows:

1. The allowed secured claim shall accrue interest from the Effective Date of the Plan at the rate of five (5.0%) percent per annum. The Class 13 creditor is not entitled to interest on its allowed secured claim from the Petition date to the Confirmation Date as the current market value of the real property is less than the amount of Citi's claim.

2. The note shall be payable in equal monthly installments of principal and interest amortized over forty (40) years. The first monthly installment shall be due thirty (30) days after the Effective Date of the Plan and subsequent monthly installments shall be due on the same day of each subsequent month. On the fortieth anniversary of the Effective Date of the Plan the outstanding principal balance of the note and all accrued and unpaid interest thereon shall be due and payable in full. The final payment shall be made either from proceeds of the sale or refinancing of the property, or from contributions of the owners of the property at the time the final payment is due.

3. The note of the Class 13 creditor shall continue to be secured by its first position deed of trust on the property, but the note and any obligation due the Class 13 creditor, which is secured by the above deed of trust, shall continue to be recourse to the Debtor. Any security for payment of the allowed

claim which Citi had at the petition date other than the deed of trust above described which encumbers the property Citi shall retain post-confirmation.

4. The Debtor and the Class 13 creditor shall agree to execute such modifications to the existing note and deed of trust as are reasonably necessary to reflect the provisions of the Plan treatment for this creditor.

Class 14 - Deficiency Claim of CitiMortgage, Inc. ("Citi").

A. Classification: The Class 14 unsecured claim consists of the allowed amount of the unsecured portion of the Class 13 lien debt on the property at 1613 57th Ave., Greeley, CO, as determined on the Effective Date of the Plan, which Debtor estimates at $21,296.41.

The amount of the Class 14 Claim represents that amount by which the allowed amount of Citi's entire claim as of the Petition Date exceeds the value of the Class 13 creditor's interest in the Debtor's interest in the real property.

B. Impairment: Class 14 is impaired.

C. Treatment: The Class 14 claim of Citi shall be treated as a Class 36 unsecured claim for payment purposes and paid pro-rata. Any liens held by the Class 14 creditor shall be null and void and removed as of the Effective Date.

Class 15 - Secured Claim of Countrywide Home Loans ("Countrywide").

A. Classification: This claim consists of the allowed secured claim of Countrywide Home Loans ("Countrywide") to the extent of the value of the secured creditor's interest in the Debtor's interest in the real property located at 1930 12th St., Greeley, CO. This claim is evidenced by a first lien mortgage evidenced by a promissory note and deed of trust. Debtor believes a portion of the Class 15 creditor's claim is unsecured.

B. Impairment: Class 15 is impaired.

C. Treatment: IN THE EVENT THE DEBTOR IS ABLE TO REACH A STIPULATION WITH COUNTRYWIDE AS TO ITS TREATMENT, THE TERMS AND CONDITIONS THEREIN WILL SUPERSEDE THE TREATMENT SET FORTH HEREIN. Under § 506 of the Bankruptcy Code, a secured creditor has a secured claim to the extent of the creditor's interest

in the Debtor's interest in the collateral and an unsecured claim for the balance, if any, unless the creditor makes a 1111(b) election, and, if eligible, elects to have its claim treated as fully secured. The allowed amount of the creditor's secured claim will be the lesser of the value of the creditor's interest in the Debtor's interest in the property as determined under § 506, or the allowed amount of the creditor's claim. The Debtor has not obtained a current appraisal, but believes the current market value of the real property at 1930 12th St.. to be $147,000.00. The Debtor proposes to limit the Class 15 creditor's secured claim to $147,000.00 and to treat the balance of its claim as an unsecured deficiency claim and treat and pay it as a Class 36 unsecured creditor. If the Debtor and the Class 15 creditor cannot agree as to the amount of the Class 15 creditor's allowed secured claim, the Court will be called upon to make that determination.

The allowed claim of the Class creditor shall be paid, assuming no 1111(b) election is made by creditor, and secured by the first lien mortgage evidenced by a promissory note and deed of trust, modified as follows:

1. The allowed secured claim shall accrue interest from the Effective Date of the Plan at the rate of five (5.0%) percent per annum. The Class 15 creditor is not entitled to interest on its allowed secured claim from the Petition date to the Confirmation Date as the current market value of the real property is less than the amount of Countrywide's claim.

2. The note shall be payable in equal monthly installments of principal and interest amortized over forty (40) years. The first monthly installment shall be due thirty (30) days after the Effective Date of the Plan and subsequent monthly installments shall be due on the same day of each subsequent month. On the fortieth anniversary of the Effective Date of the Plan the outstanding principal balance of the note and all accrued and unpaid interest thereon shall be due and payable in full. The final payment shall be made either from proceeds of the sale or refinancing of the property, or from contributions of the owners of the property at the time the final payment is due.

3. The note of the Class 15 creditor shall continue to be secured by its first position deed of trust on the property, but the note and any obligation due the Class 15 creditor, which is secured by the above deed of trust, shall continue to be recourse to the Debtor. Any security for payment of the allowed

claim which Countrywide had at the petition date other than the deed of trust above described which encumbers the property Countrywide shall retain post-confirmation.

4. The Debtor and the Class 15 creditor shall agree to execute such modifications to the existing note and deed of trust as are reasonably necessary to reflect the provisions of the Plan treatment for this creditor.

Class 16 - Deficiency Claim of Countrywide Home Loans ("Countrywide").

A. Classification: The Class 16 unsecured claim consists of the allowed amount of the unsecured portion of the Class 15 lien debt on the property at 1930 12th St., Greeley, CO, as determined on the Effective Date of the Plan, which Debtor estimates at $82,915.00.

The amount of the Class 16 Claim represents that amount by which the allowed amount of Countrywide's entire claim as of the Petition Date exceeds the value of the Class 15 creditor's interest in the Debtor's interest in the real property.

B. Impairment: Class 16 is impaired.

C. Treatment: The Class 16 claim of Countrywide shall be treated as a Class 36 unsecured claim for payment purposes and paid pro-rata. Any liens held by the Class 16 creditor shall be null and void and removed as of the Effective Date.

Class 17 - Secured Claim of The Bank of New York ("BNY").

A. Classification: This claim consists of the allowed secured claim of The Bank of New York ("BNY") to the extent of the value of the secured creditor's interest in the Debtor's interest in the real property located at 4644 E. 15th St., Tucson, AZ. This claim is evidenced by a first lien mortgage evidenced by a promissory note and deed of trust. Debtor believes a portion of the Class 17 creditor's claim is unsecured.

B. Impairment: Class 17 is impaired.

C. Treatment: IN THE EVENT THE DEBTOR IS ABLE TO REACH A STIPULATION WITH BNY AS TO ITS TREATMENT, THE TERMS AND CONDITIONS THEREIN WILL SUPERSEDE THE TREATMENT SET FORTH HEREIN. Under § 506 of the Bankruptcy Code, a secured creditor has a secured claim to the extent of the creditor's interest in the Debtor's interest in

22

the collateral and an unsecured claim for the balance, if any, unless the creditor makes a 1111(b) election, and, if eligible, elects to have its claim treated as fully secured. The allowed amount of the creditor's secured claim will be the lesser of the value of the creditor's interest in the Debtor's interest in the property as determined under § 506, or the allowed amount of the creditor's claim. The Debtor has not obtained a current appraisal, but believes the current market value of the real property at 4644 E. 15th St.. to be $101,700.00. The Debtor proposes to limit the Class 17 creditor's secured claim to $101,700.00 and to treat the balance of its claim as an unsecured deficiency claim and treat and pay it as a Class 36 unsecured creditor.  If the Debtor and the Class 17 creditor cannot agree as to the amount of the Class 17 creditor's allowed secured claim, the Court will be called upon to make that determination.

The allowed claim of the Class 17 creditor shall be paid, assuming no 1111(b) election is made by creditor, and secured by the first lien mortgage evidenced by a promissory note and deed of trust, modified as follows:

1. The allowed secured claim shall accrue interest from the Effective Date of the  Plan at the  rate of five (5.0%) percent per annum. The Class 17 creditor is not entitled to interest on its allowed secured claim from the Petition date to the Confirmation Date as the current market value of the real property is less than the amount of BNY's claim.

2. The note shall be payable in equal monthly installments of principal and interest amortized over forty (40) years. The first monthly installment shall be due thirty (30) days after the Effective Date of the Plan and subsequent monthly installments shall be due on the same day of each subsequent month. On the fortieth anniversary of the Effective Date of the Plan the outstanding principal balance of the note and all accrued and unpaid interest thereon shall be due and payable in full. The final payment shall be made either from proceeds of the sale or refinancing of the property, or from contributions of the owners of the property at the time the final payment is due.

3. The note of the Class 17 creditor shall continue to be secured by its first position deed of trust on the property, but the note and any obligation due the Class 17 creditor, which is secured by the above deed of trust, shall continue to be recourse to the Debtor. Any security for payment of the allowed claim which BNY had at the petition date other than the deed of trust above described which encumbers

the property BNY shall retain post-confirmation.

4. The Debtor and the Class 17 creditor shall agree to execute such modifications to the existing note and deed of trust as are reasonably necessary to reflect the provisions of the Plan treatment for this creditor.

Class 18 - Deficiency Claim of The Bank of New York ("BNY").

A.    Classification: The Class 18 unsecured claim consists of the allowed amount of the unsecured portion of the Class 17 lien debt on the property at 4644 E. 15th St., Tucson, AZ, as determined on the Effective Date of the Plan, which Debtor estimates at $26,271.70.

The amount of the Class 18 Claim represents that amount by which the allowed amount of BNY's entire claim as of the Petition Date exceeds the value of the Class 17 creditor's interest in the Debtor's interest in the real property.

B.    Impairment: Class 18 is impaired.

C.    Treatment: The Class 18 claim of BNY shall be treated as a Class 36 unsecured claim for payment purposes and paid pro-rata. Any liens held by the Class 18 creditor shall be null and void and removed as of the Effective Date.

Class 19 - Secured Claim of Wells Fargo Bank, N.A. c/o GMAC Mortgage, LLC ("GMAC").

A.    Classification: This claim consists of the allowed secured claim of Wells Fargo Bank, N.A. c/o GMAC Mortgage, LLC ("GMAC") to the extent of the value of the secured creditor's interest in the Debtor's interest in the real property located at 2146 10th St. Rd., Greeley, CO. This claim is evidenced by a first lien mortgage evidenced by a promissory note and deed of trust. Debtor believes a portion of the Class 19 creditor's claim is unsecured.

B.    Impairment: Class 19 is impaired.

C.    Treatment: IN THE EVENT THE DEBTOR IS ABLE TO REACH A STIPULATION WITH GMAC AS TO ITS TREATMENT, THE TERMS AND CONDITIONS THEREIN WILL SUPERSEDE THE TREATMENT SET FORTH HEREIN. Under § 506 of the Bankruptcy Code, a secured creditor has a secured claim to the extent of the creditor's interest in the Debtor's interest in the collateral and an unsecured claim for the balance, if any, unless the creditor

makes a 1111(b) election, and, if eligible, elects to have its claim treated as fully secured. The allowed amount of the creditor's secured claim will be the lesser of the value of the creditor's interest in the Debtor's interest in the property as determined under § 506, or the allowed amount of the creditor's claim. The Debtor has not obtained a current appraisal, but believes the current market value of the real property at 2146 10th St. Rd. to be $120,000.00. The Debtor proposes to limit the Class 19 creditor's secured claim to $120,000.00 and to treat the balance of its claim as an unsecured deficiency claim and treat and pay it as a Class 36 unsecured creditor. If the Debtor and the Class 19 creditor cannot agree as to the amount of the Class 19 creditor's allowed secured claim, the Court will be called upon to make that determination.

The allowed claim of the Class 19 creditor shall be paid, assuming no 1111(b) election is made by creditor, and secured by the first lien mortgage evidenced by a promissory note and deed of trust, modified as follows:

1. The allowed secured claim shall accrue interest from the Effective Date of the Plan at the rate of five (5.0%) percent per annum. The Class 19 creditor is not entitled to interest on its allowed secured claim from the Petition date to the Confirmation Date as the current market value of the real property is less than the amount of GMAC's claim.

2. The note shall be payable in equal monthly installments of principal and interest amortized over forty (40) years. The first monthly installment shall be due thirty (30) days after the Effective Date of the Plan and subsequent monthly installments shall be due on the same day of each subsequent month. On the fortieth anniversary of the Effective Date of the Plan the outstanding principal balance of the note and all accrued and unpaid interest thereon shall be due and payable in full. The final payment shall be made either from proceeds of the sale or refinancing of the property, or from contributions of the owners of the property at the time the final payment is due.

3. The note of the Class 19 creditor shall continue to be secured by its first position deed of trust on the property, but the note and any obligation due the Class 19 creditor, which is secured by the above deed of trust, shall continue to be recourse to the Debtor. Any security for payment of the allowed claim which GMAC had at the petition date other than the deed of trust above described which encumbers

25

the property GMAC shall retain post-confirmation.

4. The Debtor and the Class 19 creditor shall agree to execute such modifications to the existing note and deed of trust as are reasonably necessary to reflect the provisions of the Plan treatment for this creditor.

Class 20 - Deficiency Claim of Wells Fargo Bank, N.A. c/o GMAC Mortgage, LLC ("GMAC").

A.      Classification: The Class 20 unsecured claim consists of the allowed amount of the unsecured portion of the Class 19 lien debt on the property at 2146 10th St. Rd., Greeley, CO, as determined on the Effective Date of the Plan, which Debtor estimates at $40,022.48.

The amount of the Class 20 claim represents that amount by which the allowed amount of GMAC's entire claim as of the Petition Date exceeds the value of the Class 19 creditor's interest in the Debtor's interest in the real property.

B.      Impairment: Class 20 is impaired.

C.      Treatment: The Class 20 claim of GMAC shall be treated as a Class 36 unsecured claim for payment purposes and paid pro-rata. Any liens held by the Class 20 creditor shall be null and void and removed as of the Effective Date.

Class 21 - Second Lien Claim of U.S. Bank, National Association, as Indenture Trust ("USB")..

A.      Classification: Class 21 consists of the second lien claim of USB in the approximate amount of $35,288.96 on the real property located at 2146 10th St. Rd. Greeley, CO, which is valued at approximately $120,000.00.

B.      Impairment: Class 21 is impaired.

C.      Treatment: The Class 21 claimant, which holds a second mortgage on the real property, is believed to be wholly unsecured. The Class 21 creditor shall have its lien released upon confirmation of the Plan of Reorganization. Any deficiency amount shall be treated as a Class 36 unsecured claim and paid on a pro-rata basis.

Class 22 - Secured Claim of INDYMAC Federal Bank, FSB ("INDYMAC").

A.      Classification: This claim consists of the allowed secured claim of INDYMAC Federal Bank, FSB ("INDYMAC") to the extent of the value of the secured creditor's interest in the

Debtor's interest in the real property located at 1220 21st Ave., Greeley, CO. This claim is evidenced by a first lien mortgage evidenced by a promissory note and deed of trust. Debtor believes a portion of the Class 22 creditor's claim is unsecured.

        B.    <u>Impairment</u>: Class 22 is impaired.

        C.    <u>Treatment</u>: IN THE EVENT THE DEBTOR IS ABLE TO REACH A STIPULATION WITH INDYMAC AS TO ITS TREATMENT, THE TERMS AND CONDITIONS THEREIN WILL SUPERSEDE THE TREATMENT SET FORTH HEREIN. Under § 506 of the Bankruptcy Code, a secured creditor has a secured claim to the extent of the creditor's interest in the Debtor's interest in the collateral and an unsecured claim for the balance, if any, unless the creditor makes a 1111(b) election, and, if eligible, elects to have its claim treated as fully secured. The allowed amount of the creditor's secured claim will be the lesser of the value of the creditor's interest in the Debtor's interest in the property as determined under § 506, or the allowed amount of the creditor's claim. The Debtor has not obtained a current appraisal, but believes the current market value of the real property at 1220 21st Ave. to be $124,500.00. The Debtor proposes to limit the Class 22 creditor's secured claim to $124,500.00 and to treat the balance of its claim as an unsecured deficiency claim and treat and pay it as a Class 36 unsecured creditor.  If the Debtor and the Class 22 creditor cannot agree as to the amount of the Class 22 creditor's allowed secured claim, the Court will be called upon to make that determination.

    The allowed claim of the Class 22 creditor shall be paid, assuming no 1111(b) election is made by creditor, and secured by the first lien mortgage evidenced by a promissory note and deed of trust, modified as follows:

    1. The allowed secured claim shall accrue interest from the Effective Date of the  Plan at the  rate of five (5.0%) percent per annum. The Class 22 creditor is not entitled to interest on its allowed secured claim from the Petition date to the Confirmation Date as the current market value of the real property is less than the amount of INDYMAC's claim.

    2. The note shall be payable in equal monthly installments of principal and interest amortized over forty (40) years. The first monthly installment shall be due thirty (30) days after the

Effective Date of the Plan and subsequent monthly installments shall be due on the same day of each subsequent month. On the fortieth anniversary of the Effective Date of the Plan the outstanding principal balance of the note and all accrued and unpaid interest thereon shall be due and payable in full. The final payment shall be made either from proceeds of the sale or refinancing of the property, or from contributions of the owners of the property at the time the final payment is due.

3. The note of the Class 22 creditor shall continue to be secured by its first position deed of trust on the property, but the note and any obligation due the Class 22 creditor, which is secured by the above deed of trust, shall continue to be recourse to the Debtor. Any security for payment of the allowed claim which INDYMAC had at the petition date other than the deed of trust above described which encumbers the property INDYMAC shall retain post-confirmation.

4. The Debtor and the Class 22 creditor shall agree to execute such modifications to the existing note and deed of trust as are reasonably necessary to reflect the provisions of the Plan treatment for this creditor.

Class 23 - Deficiency Claim of INDYMAC Federal Bank, FSB ("INDYMAC").

A. Classification: The Class 23 unsecured claim consists of the allowed amount of the unsecured portion of the Class 22 lien debt on the property at 1220 21st Ave., Greeley, CO, as determined on the Effective Date of the Plan, which Debtor estimates at $13,515.18.

The amount of the Class 23 claim represents that amount by which the allowed amount of INDYMAC's entire claim as of the Petition Date exceeds the value of the Class 22 creditor's interest in the Debtor's interest in the real property.

B. Impairment: Class 23 is impaired.

C. Treatment: The Class 23 claim of INDYMAC shall be treated as a Class 36 unsecured claim for payment purposes and paid pro-rata. Any liens held by the Class 23 creditor shall be null and void and removed as of the Effective Date.

Class 24 - Secured Claim of INDYMAC Bank, ("INDYMAC").

A. Classification: This claim consists of the allowed secured claim of INDYMAC Bank, ("INDYMAC") to the extent of the value of the secured creditor's interest in the Debtor's interest

28

in the real property located at 5601-07 E. 28th St., Tucson, AZ. This claim is evidenced by a first lien mortgage evidenced by a promissory note and deed of trust. Debtor believes a portion of the Class 24 creditor's claim is unsecured.

        B.    Impairment: Class 24 is impaired.

        C.    Treatment: IN THE EVENT THE DEBTOR IS ABLE TO REACH A STIPULATION WITH INDYMAC AS TO ITS TREATMENT, THE TERMS AND CONDITIONS THEREIN WILL SUPERSEDE THE TREATMENT SET FORTH HEREIN. Under § 506 of the Bankruptcy Code, a secured creditor has a secured claim to the extent of the creditor's interest in the Debtor's interest in  the collateral and an unsecured claim for the balance, if any, unless the creditor makes a 1111(b) election, and, if eligible, elects to have its claim treated as fully secured. The allowed amount of the creditor's secured claim will be the lesser of the value of the creditor's interest in the Debtor's interest in the property as determined under § 506, or the allowed amount of the creditor's claim. The Debtor has not obtained a current appraisal, but believes the current market value of the real property at 5601-07 E. 28th St. to be $150,408.00. The Debtor proposes to limit the Class 24 creditor's secured claim to $150,408.00 and to treat the balance of its claim as an unsecured deficiency claim and treat and pay it as a Class 36 unsecured creditor.  If the Debtor and the Class 24 creditor cannot agree as to the amount of the Class 24 creditor's allowed secured claim, the Court will be called upon to make that determination.

    The allowed claim of the Class 24 creditor shall be paid, assuming no 1111(b) election is made by creditor, and secured by the first lien mortgage evidenced by a promissory note and deed of trust, modified as follows:

    1. The allowed secured claim shall accrue interest from the Effective Date of the  Plan at the rate of five (5.0%) percent per annum. The Class 24 creditor is not entitled to interest on its allowed secured claim from the Petition date to the Confirmation Date as the current market value of the real property is less than the amount of INDYMAC's claim.

    2. The note shall be payable in equal monthly installments of principal and interest amortized over forty (40) years. The first monthly installment shall be due thirty (30) days after the

Effective Date of the Plan and subsequent monthly installments shall be due on the same day of each subsequent month. On the fortieth anniversary of the Effective Date of the Plan the outstanding principal balance of the note and all accrued and unpaid interest thereon shall be due and payable in full. The final payment shall be made either from proceeds of the sale or refinancing of the property, or from contributions of the owners of the property at the time the final payment is due.

3. The note of the Class 24 creditor shall continue to be secured by its first position deed of trust on the property, but the note and any obligation due the Class 24 creditor, which is secured by the above deed of trust, shall continue to be recourse to the Debtor. Any security for payment of the allowed claim which INDYMAC had at the petition date other than the deed of trust above described which encumbers the property INDYMAC shall retain post-confirmation.

4. The Debtor and the Class 24 creditor shall agree to execute such modifications to the existing note and deed of trust as are reasonably necessary to reflect the provisions of the Plan treatment for this creditor.

Class 25 - Deficiency Claim of INDYMAC Bank, ("INDYMAC").

A.    Classification: The Class 25 unsecured claim consists of the allowed amount of the unsecured portion of the Class 24 lien debt on the property at 5601-07 E. 28th St., Tucson, AZ, as determined on the Effective Date of the Plan, which Debtor estimates at $12,883.00.

The amount of the Class 25 claim represents that amount by which the allowed amount of INDYMAC's entire claim as of the Petition Date exceeds the value of the Class 24 creditor's interest in the Debtor's interest in the real property.

B.    Impairment: Class 25 is impaired.

C.    Treatment: The Class 25 claim of INDYMAC shall be treated as a Class 36 unsecured claim for payment purposes and paid pro-rata. Any liens held by the Class 25 creditor shall be null and void and removed as of the Effective Date.

Class 26 - Secured Claim of Suntrust Mortgage, Inc., ("Suntrust").

A.    Classification: This claim consists of the allowed secured claim of Suntrust Mortgage, Inc., ("Suntrust") to the extent of the value of the secured creditor's interest in the Debtor's

30

interest in the real property located at 6965 E. Calle Canis St., Tucson, AZ. This claim is evidenced by a first lien mortgage evidenced by a promissory note and deed of trust. Debtor believes a portion of the Class 26 creditor's claim is unsecured.

        B.    <u>Impairment</u>: Class 26 is impaired.

        C.    <u>Treatment</u>: IN THE EVENT THE DEBTOR IS ABLE TO REACH A STIPULATION WITH SUNTRUST AS TO ITS TREATMENT, THE TERMS AND CONDITIONS THEREIN WILL SUPERSEDE THE TREATMENT SET FORTH HEREIN. Under § 506 of the Bankruptcy Code, a secured creditor has a secured claim to the extent of the creditor's interest in the Debtor's interest in the collateral and an unsecured claim for the balance, if any, unless the creditor makes a 1111(b) election, and, if eligible, elects to have its claim treated as fully secured. The allowed amount of the creditor's secured claim will be the lesser of the value of the creditor's interest in the Debtor's interest in the property as determined under § 506, or the allowed amount of the creditor's claim. The Debtor has not obtained a current appraisal, but believes the current market value of the real property at 6965 E. Calle Canis St. to be $115,800.00. The Debtor proposes to limit the Class 26 creditor's secured claim to $115,800.00 and to treat the balance of its claim as an unsecured deficiency claim and treat and pay it as a Class 36 unsecured creditor. If the Debtor and the Class 26 creditor cannot agree as to the amount of the Class 26 creditor's allowed secured claim, the Court will be called upon to make that determination.

        The allowed claim of the Class 26 creditor shall be paid, assuming no 1111(b) election is made by creditor, and secured by the first lien mortgage evidenced by a promissory note and deed of trust, modified as follows:

        1. The allowed secured claim shall accrue interest from the Effective Date of the Plan at the rate of five (5.0%) percent per annum. The Class 26 creditor is not entitled to interest on its allowed secured claim from the Petition date to the Confirmation Date as the current market value of the real property is less than the amount of Suntrust's claim.

        2. The note shall be payable in equal monthly installments of principal and interest amortized over forty (40) years. The first monthly installment shall be due thirty (30) days after the

Effective Date of the Plan and subsequent monthly installments shall be due on the same day of each subsequent month. On the fortieth anniversary of the Effective Date of the Plan the outstanding principal balance of the note and all accrued and unpaid interest thereon shall be due and payable in full. The final payment shall be made either from proceeds of the sale or refinancing of the property, or from contributions of the owners of the property at the time the final payment is due.

3. The note of the Class 26 creditor shall continue to be secured by its first position deed of trust on the property, but the note and any obligation due the Class 26 creditor, which is secured by the above deed of trust, shall continue to be recourse to the Debtor. Any security for payment of the allowed claim which Suntrust had at the petition date other than the deed of trust above described which encumbers the property Suntrust shall retain post-confirmation.

4. The Debtor and the Class 26 creditor shall agree to execute such modifications to the existing note and deed of trust as are reasonably necessary to reflect the provisions of the Plan treatment for this creditor.

Class 27 - Deficiency Claim of Suntrust Mortgage, Inc., ("Suntrust").

A. Classification: The Class 27 unsecured claim consists of the allowed amount of the unsecured portion of the Class 26 lien debt on the property at 6965 E. Calle Canis St., Tucson, AZ, as determined on the Effective Date of the Plan, which Debtor estimates at $5,908.77.

The amount of the Class 27 claim represents that amount by which the allowed amount of Suntrust's entire claim as of the Petition Date exceeds the value of the Class 26 creditor's interest in the Debtor's interest in the real property.

B. Impairment: Class 27 is impaired.

C. Treatment: The Class 27 claim of Suntrust shall be treated as a Class 36 unsecured claim for payment purposes and paid pro-rata. Any liens held by the Class 27 creditor shall be null and void and removed as of the Effective Date.

Class 28 - Secured Claim of Suntrust Mortgage, Inc., ("Suntrust").

A. Classification: This claim consists of the allowed secured claim of Suntrust Mortgage, Inc., ("Suntrust") to the extent of the value of the secured creditor's interest in the Debtor's

interest in the real property located at 1020 E. 24th St., Tucson, AZ. This claim is evidenced by a first lien mortgage evidenced by a promissory note and deed of trust. Debtor believes a portion of the Class 28 creditor's claim is unsecured.

B. <u>Impairment</u>: Class 28 is impaired.

C. <u>Treatment</u>: IN THE EVENT THE DEBTOR IS ABLE TO REACH A STIPULATION WITH SUNTRUST AS TO ITS TREATMENT, THE TERMS AND CONDITIONS THEREIN WILL SUPERSEDE THE TREATMENT SET FORTH HEREIN. Under § 506 of the Bankruptcy Code, a secured creditor has a secured claim to the extent of the creditor's interest in the Debtor's interest in  the collateral and an unsecured claim for the balance, if any, unless the creditor makes a 1111(b) election, and, if eligible, elects to have its claim treated as fully secured. The allowed amount of the creditor's secured claim will be the lesser of the value of the creditor's interest in the Debtor's interest in the property as determined under § 506, or the allowed amount of the creditor's claim. The Debtor has not obtained a current appraisal, but believes the current market value of the real property at 1020 E. 24th St. to be $101,000.00. The Debtor proposes to limit the Class 28 creditor's secured claim to $101,000.00 and to treat the balance of its claim as an unsecured deficiency claim and treat and pay it as a Class 36 unsecured creditor.  If the Debtor and the Class 28 creditor cannot agree as to the amount of the Class 28 creditor's allowed secured claim, the Court will be called upon to make that determination.

The allowed claim of the Class 28 creditor shall be paid, assuming no 1111(b) election is made by creditor, and secured by the first lien mortgage evidenced by a promissory note and deed of trust, modified as follows:

1. The allowed secured claim shall accrue interest from the Effective Date of the  Plan at the rate of five (5.0%) percent per annum. The Class 28 creditor is not entitled to interest on its allowed secured claim from the Petition date to the Confirmation Date as the current market value of the real property is less than the amount of Suntrust's claim.

2. The note shall be payable in equal monthly installments of principal and interest amortized over forty (40) years. The first monthly installment shall be due thirty (30) days after the

Effective Date of the Plan and subsequent monthly installments shall be due on the same day of each subsequent month. On the fortieth anniversary of the Effective Date of the Plan the outstanding principal balance of the note and all accrued and unpaid interest thereon shall be due and payable in full. The final payment shall be made either from proceeds of the sale or refinancing of the property, or from contributions of the owners of the property at the time the final payment is due.

3. The note of the Class 28 creditor shall continue to be secured by its first position deed of trust on the property, but the note and any obligation due the Class 28 creditor, which is secured by the above deed of trust, shall continue to be recourse to the Debtor. Any security for payment of the allowed claim which Suntrust had at the petition date other than the deed of trust above described which encumbers the property Suntrust shall retain post-confirmation.

4. The Debtor and the Class 28 creditor shall agree to execute such modifications to the existing note and deed of trust as are reasonably necessary to reflect the provisions of the Plan treatment for this creditor.

Class 29 - Deficiency Claim of Suntrust Mortgage, Inc., ("Suntrust").

A.     Classification: The Class 29 unsecured claim consists of the allowed amount of the unsecured portion of the Class 28 lien debt on the property at 1020 E. 24th St., Tucson, AZ, as determined on the Effective Date of the Plan, which Debtor estimates at $114,027.46.

The amount of the Class 29 claim represents that amount by which the allowed amount of Suntrust's entire claim as of the Petition Date exceeds the value of the Class 28 creditor's interest in the Debtor's interest in the real property.

B.     Impairment: Class 29 is impaired.

C.     Treatment: The Class 29 claim of Suntrust shall be treated as a Class 36 unsecured claim for payment purposes and paid pro-rata. Any liens held by the Class 29 creditor shall be null and void and removed as of the Effective Date.

Class 30 - Deficiency Claim of CitiMortgage, Inc.("Citi").

A.     Classification: Class 30 consists of the deficiency claim of Citi for a first mortgage on real property at 1131 8th St., Greeley, CO. This claim is evidenced by a Deed of Trust. Creditor has

34

filed a proof of claim totaling $134,524.40. Debtor believes that this claim is unsecured.

B.      Impairment: Class 30 is impaired.

C.      Treatment: The real property securing this claim has been abandoned per an order of the bankruptcy court dated August 12, 2009. Any allowed deficiency claim of the Class 30 creditor shall be treated as a Class 36 unsecured claim.

Class 31 - Deficiency Claim of The Bank of New York ("BNY").

_____A.      Classification:  Class 31 consists of the deficiency claim of BNY for a first mortgage on real property at 2518-24 Palo Verde, Tucson, AZ. This claim is evidenced by a Deed of Trust. Creditor has filed a proof of claim totaling $219,964.84. Debtor believes that this entire claim is unsecured.

B.      Impairment: Class 31 is impaired.

C.      Treatment: The real property securing this claim has been abandoned per an order of the bankruptcy court dated August 12, 2009. Any allowed deficiency claim of the Class 31 creditor shall be treated as a Class 36 unsecured claim.

Class 32 - Deficiency Claim of Bank of America, National Association as successor ("BA").

_____A.      Classification:  Class 32 consists of the alleged secured claim of BoA for a second mortgage on real property at 2518-24 Palo Verde, Tucson, AZ. Creditor has filed a proof of claim totaling $40,510.67. Debtor believes that this entire claim is unsecured.

B.      Impairment: Class 32 is impaired.

C.      Treatment: The real property securing this claim has been abandoned per an order of the bankruptcy court dated August 12, 2009. Any allowed deficiency claim of the Class 32 creditor shall be treated as a Class 36 unsecured claim.

Class 33 - Deficiency Claim of INDYMAC Federal Bank, FSB.("INDYMAC").

_____A.      Classification:  Class 33 consists of the alleged secured claims of INDYMAC for a first mortgage on real property at 740 W. Las Lomitas Rd., Tucson, AZ. This claim is evidenced by a Deed of Trust. Creditor has filed a proof of claim totaling $318,822.17. Debtor believes that this entire claim is unsecured.

B.     Impairment: Class 33 is impaired.

C.     Treatment: The real property securing this claim has been abandoned per an order of the bankruptcy court dated August 12, 2009. Any allowed deficiency claim of the Class 33 creditor shall be treated as a Class 36 unsecured claim.

Class 34 - Deficiency Claim of Green Tree Servicing, LLC ("Green Tree").

A.     Classification:  Class 34 consists of the alleged secured claim of Green Tree for a second mortgage on real property at 740 W. Las Lomitas Rd., Tucson, AZ. Debtor believes Creditor has a claim totaling approximately $137,411.00. Debtor believes that this entire claim is unsecured.

B.     Impairment: Class 34 is impaired.

C.     Treatment: The real property securing this claim has been abandoned per an order of the bankruptcy court dated August 12, 2009. Any allowed deficiency claim of the Class 34 creditor shall be treated as a Class 36 unsecured claim.

Class 35 - Deficiency Claim of Kenneth Padilla ("Padilla").

A.     Classification:  Class 35 consists of the alleged secured claims of Padilla for a first mortgage on real property at 929 5th St., Greeley, CO. This claim is evidenced by a Deed of Trust. Debtor believes Creditor has a claim totaling approximately $111,000. Debtor believes that this entire claim is unsecured.

B.     Impairment: Class 35 is impaired.

C.     Treatment: The real property securing this claim has been abandoned per an order of the bankruptcy court dated August 12, 2009. Any allowed deficiency claim of the Class 35 creditor shall be treated as a Class 36 unsecured claim.

Class 36 - Unsecured Deficiency Claims and Unsecured Claims.

A.     Classification:  Class 36 consists of all unsecured deficiency claims and unsecured claims against the debtor. Debtor estimates these claims at approximately  $1,885,730.20.

B.     Impairment: Class 36 is impaired.

C.     Treatment:  The Class 36 claims shall be paid an amount equal to five percent (5%) of the allowed amount of their claims at 5% interest on the unpaid balance  in 120 equal monthly

36

installments with the first payment due 60 days from the Effective Date. Any liens held by the Class 36 creditors shall be null and void and removed as of the Effective Date.

Class 37 - Contingent, Unliquidated and Disputed Claims.

_____A.     Classification:  Class 37 consists of the claims of all contingent, unliquidated and disputed claims..

B.     Impairment: Class 37 is impaired.

C.     Treatment: Class 37 creditors shall receive no distribution under the Plan.

Class 38 - Debtor's Interest.

_____A.     Classification:  Class 38 consists of the interests of the debtor.

B.     Impairment: Class 38 is not impaired.

C.     Treatment: Debtor shall retain all of its legal and equitable interest in exempt and non-exempt assets of this estate, as all reconciliation issues have been met.  All estate property shall vest in the Debtor at confirmation.

## IX. DISPUTED CLAIMS

The Debtor reserves the right to verify and object to any proof of claim. Payment of disputed claims shall be made only after agreement has been reached between the Debtor and the Creditor or upon the order of the Court.  Any and all objections to proofs of claim will be filed within sixty (60) days of the Effective Date of this plan or will be waived.

## X. EXECUTORY CONTRACTS

At the time of the filing, the Debtor has leases with tenants which it is assuming.

## XI. DOMESTIC SUPPORT OBLIGATIONS

As reflected in the schedules filed by the Debtor, there are no domestic support orders against the Debtor.

# XII. CHAPTER 7 LIQUIDATION ANALYSIS

Pursuant to the provisions of the Bankruptcy Code providing for Court approval of a Plan or Reorganization, Debtor is required to pay creditors at least as much as creditors would receive in a Chapter 7 liquidation case, after costs of administration and the liquidation of the Debtor's assets. A Liquidation Analysis is attached hereto as Exhibit "C". The Liquidation Analysis represents an estimate of recovery based upon hypothetical liquidation assumptions whereby a Trustee would conduct the Chapter 7 liquidations to convert assets to cash and settle claims. The determination of the hypothetical proceeds from the liquidation of assets is an uncertain process involving the use of estimates and assumptions that, although considered reasonable, are inherently subject to business, economic and competitive contingencies beyond the control of the Debtor.

# XIII. CRAM-DOWN

If all impaired classes do not accept the Plan, the Debtor, Debtor-in-Possession will use the "cram-down" provisions of the Bankruptcy Code. The determination on amounts of reduction of claims will be made following the voting on confirmation of the Plan. Cram-down is a colloquial term for confirmation of a Plan over a dissent of a class of holders of claims of interests.

# XIV. TAX CONSEQUENCES

Neither the Debtor nor Debtor's lawyer can make any statements with regard to the tax consequences of the Plan on any of the creditors. Each creditor in this case, when analyzing the Plan, should consult with its own professional advisors to determine whether or not acceptance of the Plan by the creditor will result in any adverse tax consequences to the creditor.

# XV. IMPLEMENTATION AND CONSUMMATION OF PLAN

The terms of the Plan subsequent to confirmation shall bind the Debtor, any entity acquiring property under the Plan, and any creditor or claimant, whether or not such creditor or claimant has accepted the Plan. All property of the estate shall vest in the Debtor and shall be free from attachment,

levy, or garnishment of execution by creditors bound by the Plan.

It shall be the obligation of each creditor participating under the Plan to keep the Debtor advised of its current mailing address. In the event any payment tendered to creditors is mailed, postage prepaid, (1) to the address specified in the Debtor's schedules and statement, (2) to the address specified in any proof of claim filed by creditor or claimant here or (3) to the address provided by any such creditor or claimant for purposes of distribution, and if subsequently the Post Office returns such distribution due to a lack or insufficiency of address or forwarding address, the Debtor shall retain such distribution for a period of six months. Thereafter, the distribution shall revert to the Debtor without further Order from the Court and free and clear of any distributions to any creditor for whom a distribution has been returned by the Post Office. The Debtor reserves the right to modify the Plan in accordance with §1127 of the Bankruptcy Code. The Plan may be modified prior to confirmation provided that the plan still complies with §1122 and §1123 of the Bankruptcy Code. The Plan may be modified subsequent to confirmation and before substantial consummation of the Plan under such circumstances as may warrant such under §1127 of the Bankruptcy Code. Any holder of a claim or interest that has previously accepted or rejected a confirmed Plan, shall be deemed to have accepted or rejected any subsequently modified Plan unless the holder of such claim or interest changes its acceptance or rejection of the Plan within the time fixed by the Court.

## XVI. QUARTERLY FEES AND REPORTS

Debtor shall continue to pay quarterly fees to the U.S. Trustee System until such time as a Final Decree has been entered in this matter by the Court, closing this Chapter 11 proceeding. Debtor shall continue to file monthly operating reports until such time as the Court enters an Order confirming this Chapter 11 Plan of Reorganization. At such time, Debtor shall cease filing monthly operating reports and shall begin filing quarterly post confirmation reports. These quarterly reports shall be filed until such time as a Final Decree has been entered in this matter by the Court, closing this Chapter 11 proceeding.

## XVII. RETENTION OF JURISDICTION

39

The Bankruptcy Court will retain jurisdiction over this case for purposes of determining the allowance of claims or objections to claims. The Court will also retain jurisdiction for purposes of fixing allowances for compensation and/or for purposes of establishing bar dates and making a determination with respect to all disputed claims. Finally, the Court shall retain jurisdiction for purposes of determining any dispute arising from the interpretation, implementation or consummation of the Plan and to implement and enforce the provisions of estoppel, the principles of *res judicata* or collateral estoppel with respect to any term or provision contained herein in the event the Plan is not confirmed.

The Court may enter a Final Decree and retain jurisdiction over this case to reopen the case to provide relief including the entering of a Discharge Order.

## XVIII. REPRESENTATION

No representations concerning the Debtor are authorized by the Debtor other than as set forth in this statement. Any representation or inducement made to secure your acceptance other than as contained in this statement should not be relied upon by you in arriving at your decision, and such additional representations and inducements should be reported to counsel for the Debtor, who, in turn, shall deliver such information to the Bankruptcy Court for such action as may be deemed appropriate.

## XIX. CONCLUSION

It is respectfully submitted that Debtor has given every thought to the complex problems confronting Debtor, and, with the assistance of counsel, has devised and formulated this Plan with the hope that the equitableness of the Plan will be considered by the creditors.

DATED November 9, 2009.

LAW OFFICES OF
*ERIC SLOCUM SPARKS, P.C.*


/s/ Sparks AZBAR #11726
Eric Slocum Sparks

40

1                                        Attorney for Debtor

2

3    COPIES of the foregoing
     mailed/delivered/faxed on
4    November 9, 2009, to:

5    UNITED STATES TRUSTEE
     230 N. First Ave. #204
6    Phoenix, Arizona 85003

7

8    /s/ K. Horak

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28